UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

LEDVIN ALARCON,

    Plaintiff,

vs.

J & J, INC. d/b/a EAGLE PAINTING, a Florida corporation,
and JOHN H. FIELD, individually,

    Defendants.
_____/

## COMPLAINT

Ledvin Alarcon ("Alarcon" or "Plaintiff") hereby sues J & J, Inc. d/b/a Eagle Painting ("Eagle Painting"), and John H. Field ("John") (collectively "Defendants"), and alleges as follows:

### Introduction

1. This is an action by Plaintiff against Defendants for retaliation pursuant to the anti-retaliation provisions within the Fair Labor Standards Act ("FLSA").

2. Plaintiff seeks damages, reasonable attorneys' fee and costs, and all other remedies allowable by law.

### Parties, Jurisdiction and Venue

3. Eagle Painting is a Florida corporation with its principal place of business in Broward County, Florida.

4. John is over the age of eighteen, a resident of Broward County, and is otherwise *sui juris*.

5. At all times material, John was and is an owner and operator of Eagle Painting.

6. During the relevant period, Plaintiff performed work for Defendants in Broward County, Florida.

7. Venue is proper in this Court because Defendants transact business in this District, Defendants maintain a principal place of business in this District, Defendants employed Plaintiff in this District, and the claims arose within this Circuit.

**A. Defendants' Business**

8. Defendants operate a residential and commercial painting company and continue to do so up to and through the filing of this instant action.

9. Eagle Painting's annual volume of sales or business exceeded $500,000 annually for every relevant year.

10. At all relevant times, Defendants employed two or more employees, including Plaintiff, that customarily, continually, and regularly handled goods and materials that i) were purchased from a person or entity outside the state of Florida and/or ii) were purchased in Florida but had previously traveled through interstate commerce.

11. Upon information and belief, Defendants obtained and solicited funds from non-Florida sources, accepted funds from non-Florida sources,

used telephonic transmissions going over state lines to do its business, transmitted funds outside the State of Florida, used electronic means to market and run their business in a way that was not limited to Florida, and otherwise regularly engaged in interstate commerce during the relevant period.

12. Defendants, upon information and belief, accept credit card payments, wire transfers, and other forms of payments that are made or processed outside the state of Florida.

13. Defendants are employers engaged in interstate commerce and subject to the FLSA.

B. **Defendants' Employment Of Plaintiff**.

14. Alarcon began working for Defendants in approximately 2005.

15. Alarcon ceased working for Defendants in or around November 2018.

16. Alarcon worked as a Painter during his entire tenure at Eagle Painting

17. During the relevant period, Alarcon was controlled by Defendants.

18. During the relevant period, Defendants set Alarcon's schedule.

19. During the relevant period, Alarcon reported to John.

20. Defendants provided tools, materials, and supplies to be used by Alarcon when performing work for Defendants.

21. Alarcon was issued uniforms by Defendants.

C. **John's Intimidation Of Plaintiff**

22. During his employment with Defendants, John would push workers, including Alarcon, to their physical and mental limits.

23. John would incessantly insist on more and more work from Alarcon and other painters.

24. John would become irate if he would observe Alarcon and other Painters drink water on the job.

25. John would also get upset if Alarcon or other Painters used the restroom.

26. John further claimed that Painters would be "stealing money" from him by drinking water or going to the bathroom.

27. John would intimidate Spanish speakers in the workplace by stating that everyone should speak English in the United States.

28. John would also turn off Spanish music played by Painters.

29. After he ceased working for Defendants, Alarcon put Defendants on notice of impending overtime claims under the Fair Labor Standards Act.

30. Thereafter, Alarcon began to receive telephone calls from John.

31. Alarcon also received a call from Janet Field, a co-owner of Eagle Painting.

32. During the call, Janet told Alarcon not to disclose the existence of cash payments to the Department of Labor who had previously conducted its own investigation of Defendants pay practices.

33. Janet "reminded" Alarcon that he had not filed tax returns (a statement that was nonetheless not true).

34. After the filing of his overtime Complaint with this Honorable Court (the "Federal Overtime Action"), Alarcon and co-plaintiff Jose Garcia ("Garcia") began to receive additional calls from John.

35. In connection with the Federal Overtime Action, Alarcon and Garcia's process server attempted, on at least two (2) occasions, to serve John with the Federal Overtime Action's Complaint at their residence prior to March 27, 2019. After at least one of the attempts, Alarcon received a missed call from John. The call was made on March 24, 2019.

36. Defendants were served with the Federal Overtime Action's Complaint at 11:00 AM on March 27, 2019. Within a few hours after being served with the Complaint in the Federal Overtime Action, John called Garcia's cell phone.

37. Thereafter, John called Alarcon on April 1, 2019.

38. Alarcon and Garcia filed their Statement of Claim in the Federal Overtime Action on April 8, 2019.

39. Both Garcia and Alarcon received missed calls from John after the Statement of Claim was filed.

40. Alarcon attend a Settlement Conference as part of the Federal Overtime Action. While in the courtroom, John would scowl at Alarcon and Garcia.

41. Defendants deposed both Alarcon and Garcia on October 2, 2019 as part of the Federal Overtime Action.

42. Minutes after Alarcon's deposition concluded, John approached Alarcon and called him a "pussy."

43. Alarcon exited the conference room in which the deposition occurred and waited for his lawyer in the lobby/reception area of Defendants' counsel's office.

44. Janet observed John's erratic behavior and his clear intent to confront Alarcon and Garcia in the lobby/reception area.

45. Janet pled for John not to go outside to the lobby/reception area and tried to restrain him.

46. Janet was not successful.

47. John exited the conference room and made direct, unwanted physical contact with Alarcon.

48. John also called Alarcon and Garcia "evil."

49. This was not the first time John made derogatory comments about Alarcon and Garcia.

50. During his deposition in the Federal Overtime Action, John referred to Alarcon and Garcia as "disgusting."

51. John also asked if Alarcon and Garcia were too "cowardly or unmanly" to speak with him.

52. On October 4, 2019, Alarcon, through his counsel, notified Defendants that he was exploring a post-employment retaliation claim against Defendants in light of their historical conduct.

53. On October 8, 2019—six (6) days after Alarcon's deposition and four (4) days after being informed of a potential retaliation claim—Defendants provided, in the Federal Overtime Action, a "Notice of Serving Non-Party" indicating that a subpoena had been sent to an entity Alarcon currently render services for (Painting Express) (hereinafter, the "Retaliatory Subpoena").

54. The Notice provided that the Retaliatory Subpoena *had already been "sent . . . out for service,"* thereby depriving Alarcon from an opportunity to object to the Retaliatory Subpoena and ensure that Painting Express was not informed of the overtime lawsuit.

55. The Retaliatory Subpoena was sent out without prior notice as reprisal for Plaintiffs' claims and deposition testimony.

56. The Retaliatory Subpoena sought information that is entirely irrelevant to the Federal Overtime Action.

57. The purpose of the Retaliatory Subpoena was to jeopardize Alarcon's current manner of making a living.

## COUNT I
## UNLAWFUL RETALIATION BY EAGLE PAINTING UNDER THE FAIR LABOR STANDARDS

58. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 57 above as if fully set forth herein.

59. Plaintiff engaged in various instances of protected activity prior to the filing of this lawsuit, including:

- Advising Defendants of his entitlement to unpaid wages before the Federal Overtime Action was filed;

- Filing the Federal Overtime Action;

- Participating in the Federal Overtime Action's litigation; and

- Testifying during his deposition regarding his work hours and unpaid overtime.

60. Eagle Painting, through John, retaliated against Plaintiff for engaging in such protected activity.

61. Defendants' retaliatory conduct is intended to chill Plaintiff's willingness to continue to enforce his rights under the FLSA.

62. Reasonable workers would naturally be dissuaded from continuing to support an FLSA lawsuit when faced with the retaliatory conduct Defendants have engaged in.

63. Plaintiff has suffered mental and emotional distress because of Defendants' retaliatory conduct.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

a. Enter judgment for Plaintiff against Eagle Painting under the FLSA;

b. Award Plaintiff actual damages;

c. Award Plaintiff liquidated damages;

d. Award Plaintiff compensatory damages for mental and emotional distress;

e. Award Plaintiff his attorneys' fees and costs;

f. Award Plaintiff all recoverable interest; and

g. Award any other relief this Honorable Court deems just and proper.

## COUNT II
## UNLAWFUL RETALIATION BY JOHN FIELD
## UNDER THE FAIR LABOR STANDARDS

64. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 57 above as if fully set forth herein.

65. John is an employer under the FLSA.

66. John is an owner of Eagle Painting and was so during the relevant period and during the litigation of the Federal Overtime Action.

67. John controls the day-to-day operations of Eagle Painting and did so during the relevant period and during the litigation of the Federal Overtime Action.

68. Plaintiff engaged in various instances of protected activity prior to the filing of this lawsuit, including:

- Advising Defendants of his entitlement to unpaid wages before the Federal Overtime Action was filed;
- Filing the Federal Overtime Action;
- Participating in the Federal Overtime Action's litigation; and
- Testifying during his deposition regarding his work hours and unpaid overtime.

69. Eagle Painting, through John, retaliated against Plaintiff for engaging in such protected activity.

70. Defendant's retaliatory conduct is intended to chill Plaintiff's willingness to continue to enforce his rights under the FLSA.

71. Reasonable workers would naturally be dissuaded from continuing to support an FLSA lawsuit when faced with the retaliatory conduct Defendant has engaged in.

72. Plaintiff has suffered mental and emotional distress because of Defendant's retaliatory conduct.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

a. Enter judgment for Plaintiff against John under the FLSA;

b. Award Plaintiff actual damages;

c. Award Plaintiff liquidated damages;

d. Award Plaintiff compensatory damages for mental and emotional distress;

e. Award Plaintiff his attorneys' fees and costs;

f. Award Plaintiff all recoverable interest; and

g. Award any other relief this Honorable Court deems just and proper.

## JURY TRIAL

Plaintiff hereby requests a trial by jury with respect to all claims so triable.

Respectfully submitted,

***/s/ J. Freddy Perera***
J. Freddy Perera, Esq.
Florida Bar No. 93625
freddy@pererabarnhart.com
Valerie Barnhart, Esq.
Florida Bar No. 88549
valerie@pererabarnhart.com
**PERERA BARNHART ALEMAN**
12555 Orange Drive, 2nd Floor
Davie, Florida 33330
Phone: 786.485.5232
*Attorneys for Plaintiff*